IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS, PEORIA DIVISION

Lester Gayton, Jr., Administrator )
of the Estate of India Taylor, Deceased, )
)
    Plaintiff, )
)
v. ) No. 04-1354
)
Michael D. McCoy et al., )
)
    Defendants. )

## OPINION

This case is before the Court on Defendants' respective motions to dismiss Plaintiff's Second Amended Complaint (d/e's 36, 43, 55), and on Plaintiff's motion to alter the June 6, 2005 scheduling order (d/e 61).

## Background

This case arises from the death of India Taylor ("Ms. Taylor") during her incarceration in Peoria County Jail in October, 2003. Plaintiff's original Complaint (d/e 1) named as defendants Michael McCoy (Sheriff of Peoria County), Steven Smith (Corrections Superintendent of Peoria County), and M. Tranchitella (Correctional Officer). A motion to dismiss followed, which was resolved by the District Court in an order granting and denying in part this Court's Report and Recommendation on the motion. (d/e 22). Plaintiff

then filed a First Amended Complaint against the same defendants, in response to this Court's order. (d/e 24).

On May 5, 2005, the parties submitted a joint proposed scheduling plan, that proposed Plaintiff be granted leave to amend complaint to join additional party defendants through October 17, 2005 (d/e 28). On June 2, 2005, this Court entered a scheduling order setting a deadline of October 17, 2005, for motions to join other parties, and a deadline of February 6, 2006 to amend the pleadings. (d/e 30).

On October 17, 2005, Plaintiff filed a Second Amended Complaint, adding eight new defendants and dropping Tranchitella as a defendant.[1] The Second Amended Complaint also makes new claims arising from the defendants' alleged destruction of or failure to preserve evidence regarding the circumstances of Ms. Tranchitella's death. Presently before the Court are the motions to dismiss this Second Amended Complaint.

On May 31, 2006, the eight new Defendants consented to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. 636(c)

---

[1] The new defendants are: Amanda Eccles (Jail Officer), Melinda Brownell (Jail Officer), April Cummings (Jail Officer), Olivia Radcliff (Nurse), Patricia Mattus (Nurse), Pam Hibbert (Nurse), Advanced Correctional Healthcare, Inc., Norman Johnson, M.D. (President of Advanced Correctional Healthcare, Inc.), and Peoria County.

(d/e 72). The original parties consented to the undersigned on August 16, 2005 (d/e 32).

## STANDARD OF REVIEW

When considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court takes the allegations in the complaint as true, viewing all facts, as well as any reasonable inferences, in the light most favorable to the plaintiff. Patel v. City of Chicago, 383 F.3d 569, 572 (7th Cir. 2004). "'A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514 (2002), *quoting* Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).

## Analysis

**I.   Failure of Plaintiff to file Motion asking Leave to File Second Amended Complaint**

Defendants Radcliff, Mattus, Hibbert, Johnson, and Advanced Correctional Healthcare, Inc., (the "Healthcare" Defendants) move to strike the Second Amended Complaint because Plaintiff did not file a motion for leave of Court to amend his Complaint. They point to Fed. R. Civ. P. 15(a), which requires leave of court to amend pleadings after a responsive pleading is served.

Plaintiff counters that the joint proposed discovery plan allowed the filing of amended complaints without leave by October 17, 2005, though the scheduling order entered by the Court stated that no *motions* to join additional parties to be filed after that date. In addition to his response, Plaintiff has filed a motion to alter the June 5, 2005 order to reflect that the parties gave consent to the filing of an amended complaint by October 17, 2005. (d/e 61).

Plaintiff is correct that the parties consented to joining additional parties by October 17, 2005 (d/e 28), but the Healthcare defendants were not parties at that time and did not so consent. On the other hand, the Court understands why Plaintiff did not file a motion for leave to amend: the defendants in the case at that time had already consented, and the Healthcare defendants were not in the case yet, so they would not have even responded to a motion. Further, it is not clear that the 15(a) argument is the Healthcare defendants' objection to make, since they had not filed any responsive pleading before the Second Amended Complaint was filed (because they were not in the case).

The purpose of requiring leave of court is to protect parties and the court from a plaintiff's undue prejudice, delay, bad faith, or dilatory motive

in bringing the amendment, or to prevent wasted time on a futile amendment. See <u>Bethany Pharmacal Co. v. QVC, Inc.</u>, 241 F.3d 854, 861 (7th Cir. 2001). There is no argument that the Second Amended complaint presents any of these problems, nor does it appear to on its face. Accordingly, the Court will not strike the Second Amended Complaint on these grounds. To the extent Plaintiff needed leave of Court to file the Second Amended Complaint, leave is granted.

## II.     Affidavit Required by 735 ILCS 5/2-622

The Second Amended Complaint did not have attached the documents the Healthcare defendants assert are required by 735 ILCS 5/2-622 (regarding malpractice actions under Illinois law). Plaintiff has now filed those documents, mooting this objection by the Healthcare defendants (d/e 68).

## III.    Defendant Dr. Johnson and Respondeat Superior Liability

Dr. Johnson is correct that there is no respondeat superior liability for claims under 42 U.S.C. § 1983. Dr. Johnson asks to strike paragraph 56 of the Second Amended Complaint, which states in pertinent part that: "Advanced . . .is a business corporation . . . acting under color of state law . . . . Advanced is liable for the acts of its agents, employees, and officers

under the agency responsibility of a non-governmental corporate 'person' acting under color of state law under 42 U.S.C. § 1983." (d/e 34, ¶ 56). An accompanying footnote states, "This allegation is included to preserve the claim that a private corporation providing medical services to a jail is liable under Section 1983 without the necessity of proving the policy making agent and a policy choice by the corporation's officers, agents, or employees as is required for the liability of governmental entities." (d/e 4, p. 19, n.2).

Plaintiff's response states that his position is that "a private corporation acting under color of state law is a person subject to liability for the acts of its agents under general corporate agency principles. . . However, he does report to the court that the courts of appeal including the Seventh Circuit have rejected that position." (d/e 60, p.8).

To the extent Plaintiff maintains that a private corporation is liable under § 1983 for the unauthorized acts of its employees and agents, he is wrong under controlling precedent, as he concedes. Woodward v. Correctional Medical Services, 368 F.3d 917, 927 (7th Cir. 2004). Advanced is not liable under § 1983 unless it maintained unconstitutional policies or practices. Id. Paragraph 56, therefore, is stricken, but only to

the extent it attempts to make out a § 1983 claim against Advanced based on respondeat superior liability.

In the same vein, Dr. Johnson argues that the Second Amended Complaint alleges only vicarious liability against him.  He also asserts that he cannot be held liable under a "custom and policy" theory because he did not employ the nurses, nor did he have any involvement in Ms. Taylor's direct care.  Yet Plaintiff makes clear that he believes Dr. Johnson is personally responsible for establishing the custom and policy that led to Ms. Taylor's death, and was personally involved in the events after that death.  At this point, Plaintiff's allegations are accepted as true.  Dr. Johnson's involvement is a factual determination to be made on a complete evidentiary record.

**IV.  Claim for Failure to Preserve Evidence/Destruction of Evidence**

Construed liberally, Plaintiff alleges that Defendants intentionally failed to preserve or destroyed existing evidence relevant to the circumstances of India Taylor's death at the Jail, and intentionally failed to investigate the cause of her death, in order to ensure that evidence to support a claim would not be uncovered.  Specifically, Plaintiff asserts that the original, two-sided, intake screening form from October 15, 2003, when

Plaintiff was arrested, was not retained, though such records are kept by the Jail in its usual course of business (the complete intake forms for Taylor's prior arrests were retained). Plaintiff asserts he has been able to obtain only a copy of the front side of the intake form from October 15. Additionally, Plaintiff alleges that Ms. Taylor completed a sick call request on October 16, 2003, which is also not part of the records of Advanced or the Jail, though again such a request would have been kept in the ordinary course of business. Lastly, Plaintiff maintains that the individual performing Ms. Taylor's autopsy was not given sufficient information to accurately determine the cause of death. The autopsy therefore allegedly does not address whether Defendants' denial of medications or refusal to treat Taylor's vomiting played a role in Taylor's death. (d/e 57, pp. 12-13).

Plaintiff maintains that: "Taylor's survivors had a constitutionally protected liberty interest in access to the courts for wrongs of state actors remediable under the common law of Illinois and the Civil Rights Act of 1871 free from the intentional or deliberate indifference to preservation of the key facts of wrongdoing in the injury, disease, or death of inmates effected by state actors guaranteed as a privilege and immunity of citizenship under Article IV, Section 2 of the Constitution, as a part of the

right to petition the Government for redress of grievances under the First Amendment and by procedural and substantive due process guarantees of the Fourteenth Amendment." (d/e 34, ¶ 44).

Defendants move to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), arguing that Plaintiff has not alleged that Defendants did anything to delay or prevent him from bringing these claims, citing Vasquez v. Hernandez, 60 F.3d 325, 328 (7th Cir. 1995). (D/e 44, p. 1).

Plaintiff counters that the intentional destruction or concealment of evidence makes out a Constitutional claim, and that dismissal without an opportunity for discovery is premature. He asserts that discovery is needed to determine whether Defendants' conduct deprived Plaintiff of any claim or reduced a claim's value. (d/e 57, p. 13).

Vasquez states in relevant part:

> The right of individuals to pursue legal redress for claims which have a reasonable basis in law and fact is protected by the First and Fourteenth Amendments. . . . A corollary of this right is that efforts by state actors to impede an individual's access to courts or administrative agencies may provide the basis for a constitutional claim under 42 U.S.C. § 1983. . . , and therefore, when police officers conceal or obscure important facts about a crime from its victims rendering hollow the right to seek redress, constitutional rights are undoubtedly abridged.

60 F.3d 325, 328 (7th Cir. 1995)(citations omitted). "Deliberate destruction

of evidence can sabotage a case . . ., if it effectively deprives the plaintiff of essential proof." Harrell v. Cook, 169 F.3d 428, 432 (7th Cir. 1999)(police officers' intentional loss of evidence in theft case stated constitutional claim, but police were entitled to qualified immunity). If the facts needed for a claim are already known to the plaintiff, or readily discovered from another source, then no constitutional claim lies. *See* Cefalu v. Village of Elk Grove, 211 F.3d 416, 424 (7th Cir. 2000)(even if there was a cover-up, no Constitutional claim because facts needed to recover were always known to plaintiffs). Vasquez dealt with a police cover up of a crime, but none of the parties argue that same principles do not apply to other state actors.

    A Supreme Court case not discussed by the parties is apt: Christopher v. Harbury, 536 U.S. 403 (2002). Christopher's relevancy comes from its statement that an access claim regarding a lost opportunity at litigation "must identify a remedy that may be awarded as recompense but not otherwise available in some suit that may yet be brought." 536 U.S. at 415. Defendants touch on this idea in their argument that Plaintiff has and is pursuing legal action for Taylor's death. Christopher stated:

> Like any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by

allegations in the complaint sufficient to give fair notice to a defendant. . . . And because . . . backward-looking cases are brought to get relief unobtainable in other suits, the remedy sought must itself be identified to hedge against the risk that an access claim be tried all the way through, only to find that the court can award no remedy that the plaintiff could not have been awarded on a presently existing claim." 536 U.S. at 416.[2]

Plaintiff's factual and legal grounds for this claim are difficult to discern from the Second Amended Complaint and his response, particularly in light of Christopher.  At this point, however, the Court cannot conclude beyond doubt that Plaintiff states no claim.  *See* Harrell v. Cook, 169 F.3d 428, 431 (7th Cir. 1999)(allegation that defendants "intentionally deprive[d] plaintiff of their rights by disposing of or absconding with" evidence stated claim).   Vasquez was decided on summary judgment, not a motion to dismiss.  Additionally, the parties do not address Christopher, and its correct application here may be subject to reasonable debate. Additionally, even if it is ultimately determined that Plaintiff has no claim for concealment/destruction of evidence, the evidence garnered to try to establish that claim may still arguably be relevant to show Defendants' knowledge and state of mind on other claims that do survive.

---

[2]For example, an "underlying action has already been tried to an inadequate result due to missing or fabricated evidence in an official cover-up . . ."  Christopher, 536 U.S. at 416 n. 13, *citing* Bell, 746 F.2d at 1223.

## V.  Parents & Siblings Recovery under 42 U.S.C. § 1983 for loss of society/companionship

Defendants argue that the Seventh Circuit's decision in <u>Russ v. Watts</u>, 414 F.3d 783 (7th Cir. 2005), *cert. denied* 126 S.Ct. 1065 (Jan. 9, 2006), bars Ms. Taylor's sibling and parents from recovering damages for the loss of society or companionship under 42 U.S.C. § 1983.  This Court had earlier recommended dismissal of those damages, believing <u>Bell v. City of Milwaukee</u>, 746, F.2d 1205 (7th Cir. 1984) dictated that result.  The District Court declined to adopt that recommendation, instead deferring the decision for more thorough briefing.  The District Court reasoned that <u>Bell</u> did not address this particular situation, where, though a sibling has no constitutional action on his own behalf, is able to recover damages for loss of companionship under state law.  (d/e 22, p. 4).  The Seventh Circuit decision in <u>Russ</u> came down **after** the District Court's ruling.

<u>Russ</u> overruled <u>Bell</u> "insofar as it [Bell] recognized a constitutional right to recover for the loss of companionship of an adult child when that relationship is terminated as an incidental result of state action."  414 F.3d at 791.

Plaintiff contends that <u>Russ</u> and <u>Bell</u> stand for the proposition that state law determines what kind of damages are recoverable for Constitutional violations resulting in death. He maintains that, since the Illinois Wrongful Death Act allows the Administrator of Ms. Taylor's estate to recover loss of companionship damages for her brother and parents, such damages are also recoverable by the Administrator in an action under 42 U.S.C. § 1983 and 1988.[3]

Plaintiff is correct that neither the parent in <u>Russ</u> nor the siblings in <u>Bell</u> held a right of recovery under the applicable state's wrongful death law. And, state law does fill in gaps for actions under § 1983, but only to the extent an action under § 1983 exists, and only to the extent consistent with § 1983 policy--"compensation for and deterrence of unconstitutional acts committed under state law." <u>Bell</u>, 746 F.2d at 1239. For example, § 1983 is silent on who has standing to pursue a § 1983 action when the victim dies as a result of a constitutional deprivation, so state law may supply the answer (to the extent consistent with federal policy). <u>Spence v. Staras</u>, 507 F.2d 554, 557 (7th Cir. 1974)(§ 1983 action survives

---

[3] The Court accepts for purposes of this Order only Plaintiff's assertion that he can recover those damages under Illinois law–defendants do not assert otherwise.

decedent's death, personal representative had standing under Illinois law to bring action).

It is difficult to understand how recovery by the Administrator of Ms. Taylor's estate under §1983 action for the loss of society and companionship suffered by Ms. Taylor's parents and sibling could be reconciled with the Seventh Circuit's decision in <u>Russ</u>.  <u>Bell</u> and <u>Russ</u>, taken together, conclude that severance of these adult family relationships, as an incidental result of state action, is not a Constitutional injury. Violation of a federal right is a prerequisite to recovery under § 1983–there must be a constitutionally protected right at stake.  <u>Pepper v. Village of Oak Park</u>, 430 F.3d 805, 808 (7th Cir. 2005)(at outset, court must first determine constitutional right at stake).  Allowing the Administrator to use § 1983 to recover for family members what those family members could not individually under § 1983 would "attach constitutional significance" to interests that <u>Russ</u> and <u>Bell</u> say are not constitutionally protected.  *See* <u>Bell</u>, 746 F.2d at 1247.

Plaintiff argues that 42 U.S.C. § 1988 requires the borrowing of Illinois law to determine the damages available for Plaintiff's § 1983 action. Yet § 1988 does not come into play unless there is a violation of a federal

right. In Bell, the Court addressed state law remedies allowed a parent after first determining that a parent has a constitutionally protected liberty interest in associating with his or her child.[4] Similarly, the Supreme Court cases cited by Plaintiff-- Carey v. Piphus, 435 U.S. 247, 258 (1978) and Board of Regents v. Tomanio, 446 U.S. 482 (1980)– both involved deprivations of Constitutional rights held by the plaintiffs.  Neither § 1983 or 1988 are substantive sources of federal law–§ 1983 "merely provides remedies for deprivations of rights established elsewhere." City of Oklahoma City v. Turtle, 471 U.S. 808, 816 (1985).

    The Court does not minimize the losses and suffering of Ms. Taylor's family, but the Court believes that Russ (and Bell) precludes them, individually, as well as the Administrator of Ms. Taylor's estate on their behalf, from recovering damages for their own injuries for loss of society and companionship under 42 U.S.C. § 1983.  *See also* Claybrook v. Birchwell, 199 F.3d 350, 357 (6th Cir. 2000)("In the Sixth Circuit, a section 1983 cause of action is entirely personal to the direct victim of the alleged constitutional tort. . . no cause of action may lie under section 1983 for

---

[4] "We will first consider whether the father or siblings possess such a constitutional liberty interest and then examine the policies behind the Wisconsin law and resolve, assuming a constitutional interest exists as to either or both the father and siblings, whether the Wisconsin law is inconsistent and therefore cannot be applied." 746 F.2d 1242.

emotional distress, loss of a loved one, or any other consequent collateral injuries allegedly suffered personally by the victim's family members.).[5] It is Ms. Taylor who suffered the constitutional deprivation, not her family. The goals of § 1983-deterrence of and compensation for the violation of Ms. Taylor's federal rights– are served by Ms. Taylor's § 1983 action, which survives her death and is being pursued by Plaintiff here. Plaintiff's family may also recover whatever damages are available to them under Illinois law.

IT IS THEREFORE ORDERED THAT:

1) The motions to dismiss and/or strike the Second Amended Complaint by Defendants McCoy and Smith (d/e 36); Defendants Peoria County, Eccles, Brownell and Cummings (d/e 43); and Defendants Johnson, Radcliff, Mattus, Hibbert, and Advanced Correctional Healthcare, Inc. are granted in part and denied in part (d/e 55). Paragraph 56 of the Second Amended Complaint is stricken to the extent it attempts to make

---

[5] Claybrook was cited by the Seventh Circuit in Russ for support that "[m]ost courts that have considered the issue have expressly declined to find a violation of the familial liberty interest where the state action at issue was not aimed specifically at interfering with the relationship." Russ, 414 F.3d at 787-88; see also Andrews v. Neer, 253 F.3d 1052, 1058 n.4 (8th Cir. 2001)(plaintiff cannot "shoe horn" recovery she might have had under state law for her own injuries into recovery under Section 1983 for decedent's injuries). In Robertson v. Hecksel, 429 F.3d 1254 (11th Cir. 2005), the Eleventh Circuit reached the same result as Russ did. As of this writing, a petition for writ of certiorari in Robertson awaits decision by the Supreme Court.

out a § 1983 claim against Advanced based on respondeat superior liability. Additionally, Plaintiff's claims for damages for loss of society and companionship suffered by Ms. Taylor's parents and sibling are dismissed, but only to the extent based 42 U.S.C. § 1983. The motions are denied in all other respects.

     2) Plaintiff's motion to alter the June, 2005 scheduling order is denied as moot (d/e 61).

     3) The parties are directed to submit a proposed revised discovery plan to the Court by June 30, 2006.

     4) All Defendants are to answer Plaintiff's Amended Complaint by June 19, 2006.

     5) Defendants are directed to file reply to Plaintiff's response (d/e 71) by June 30, 2006.

     ENTER:  June 8, 2006

                              s/ Byron G. Cudmore
                              _____
                              BYRON G. CUDMORE
                              UNITED STATES MAGISTRATE JUDGE